IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19–CV–137–BR

CAROL V. CLENDENING, as Personal )
Representative of the Estate of Gary J. )
Clendening, )
                                    )
                Plaintiff, )
      v. )                ORDER
                                    )
UNITED STATES OF AMERICA, )
                                    )
               Defendant. )

This matter is before the court on the United States of America's ("defendant" or the "government") motion to dismiss Carol Clendening's ("plaintiff") complaint. (DE # 20.) Plaintiff filed a response, (DE ## 22, 23), to which defendant filed a reply, (DE # 24). This matter has been fully briefed and is now ripe for disposition.[1]

### I.    BACKGROUND

This dispute involves a United States Marine Judge Advocate General's Corps ("JAG") Officer, Gary J. Clendening ("Clendening"), who served at Camp Lejeune from May 1970 to December 1971. (See Compl., DE # 1, ¶ 2.) Clendening passed away on 16 November 2016 after having suffered from "Waldenstrom macroglobulinemia, chronic lymphoblastic lymphoma, and adult leukemia." (Id. ¶ 3.) Plaintiff, as representative of Clendening's estate, claims the injuries resulting in his death were caused by his exposure at Camp Lejeune to contaminated

---

[1] Also before the court is plaintiff's motion for a settlement conference, (DE # 25), to which the government responded in opposition, (DE # 27). The government opposes plaintiff's motion on the same grounds stated in its motion to dismiss. (Id.) Therefore, plaintiff's motion is denied and the court addresses the merits of defendant's motion to dismiss.

water as well as "radioactive waste, chemical weapon waste, solvents, benzene, and other carcinogens that were improperly disposed, buried or spilled." (Id. ¶ 2.)

Plaintiff's complaint contains numerous allegations. She contends Camp Lejeune had three main water distribution systems which served the residential areas. (Id. ¶ 50.) Plaintiff asserts that Clendening resided at one of the Hadnot Point family housing areas, (id.), which was served by the Hadnot Point water distribution system, (id.), near the Hadnot Point Fuel Farm, (id. ¶ 51). The Hadnot Point Fuel Farm was allegedly comprised of 15 fuel tanks which stored various chemicals and substances. (Id.) Plaintiff contends Clendening "regularly consumed and was exposed to substantial amounts of water supplied by the Hadnot Point water supply facilities," (id. ¶ 41), which he used for "drinking cooking, bathing, and washing clothing," (id.).

The maintaining of the Hadnot Point water system was regulated by a 1972 order from the Department of Navy Bureau of Medicine and Security ("BUMED"). (Id. ¶ 34.) BUMED 6240.3C regulated the water supply and imposed water quality standards. (Id. ¶¶ 35, 36.) It states, in relevant part,

> a. The water supply should be obtained from the most desirable source which is feasible, and effort should be made to prevent or control pollution of the source. If the source is not adequately protected by natural means, the supply shall be adequately protected by treatment.
>
> b. Frequent sanitary surveys shall be made of the water supply system to locate and identify health hazards which might exist in the system.

(Id. ¶ 35.) It further provides, in relevant part,

> d. Chemical Characteristics (Limits). Drinking water shall not contain impurities in concentrations which may be hazardous to the health of the consumers……………..Substances which may have deleterious physiological effects, or for which physiological effects are not known, shall not be introduced into the system in a manner which would permit them to reach the consumer.

(Id. ¶ 36 (omission in original).)

Plaintiff contends defendant violated the BUMED by permitting "gasoline and diesel, radioactive material, and chemical weapons to leak from the Fuel Farm, the landfill, and the incinerator[,] into the ground." (Id. ¶ 38.) She also alleges "[t]he contaminated ground water in turn leached toxic and hazardous chemicals into the walls of the water supply wells serving the Hadnot Point water distribution system[,]" (id. ¶ 39), and defendant failed to test and treat the contaminated water in violation of the BUMED, (id. ¶¶ 39, 40).

Additionally, plaintiff alleges the government discovered that the inhabitants of Camp Lejeune had been exposed to radioactive chemicals in 1980, following a contractor's visit where Strontium 90, a radioactive element, was discovered just below the earth's surface at a recreational area near Clendening's residence and work. (Id. ¶ 18.) As a result of this discovery, the government conducted a study regarding the degree of toxic exposure inhabitants at Camp Lejeune suffered, which was completed on 9 April 1981. (Id.) Plaintiff also contends the government discovered that the fuel storage at Hadnot Point Fuel Farm was leaking and in general disrepair in 1980. (Id. ¶ 52.) Beginning in 1984, various studies followed regarding the conditions of the Hadnot Point Fuel Farm and water supply, which defendant did not release to the public until 2012. (Id. ¶¶ 54–56, 69.)

Plaintiff brings claims of fraud, specifically concealment, (id. at 18), willful and wanton negligence, (id. at 21), fraudulent publication of notice to the public, (id. at 26), wrongful death due to water contamination, (id. at 27), and wrongful death due to direct exposure, (id. at 28), under the Federal Tort Claims Act ("FTCA"). Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

## II.  DISCUSSION

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff.  In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.  The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists.  The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768–69 (4th Cir. 1991) (internal citations omitted).

Defendant moves to dismiss for lack of subject matter jurisdiction on two grounds: (1) the Feres Doctrine and (2) the FTCA's discretionary function exception.  (See Mem. Supp. Mot. Dismiss, DE # 21, at 10, 24.)  Plaintiff contends neither doctrine applies to her case and, furthermore, that the Feres Doctrine should be abrogated as a matter of law.  (Pl.'s Resp. Opp'n, DE # 23, at 18, 25–26.)

**A.     Feres Doctrine**

Defendant contends that because Clendening's death allegedly resulted from his exposure to contaminated water and exposure to chemicals and radioactive waste near his residence at Camp Lejeune during his military service there, (Mem. Supp. Mot. Dismiss, DE # 21, at 12), his injury was incident to his service and, therefore, barred under Feres, (id. at 15).  Plaintiff contends Feres does not bar her claims because the government has not established what "service related activity" Clendening "was engaged in at the time of his service" which involved his chemical exposure.  (Pl.'s Resp. Opp'n, DE # 23, at 18.)  Further, plaintiff contends the government "fails to identify any military decision that would be affected by this Court's jurisdiction."  (Id. at 20.)

"[T]he Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." Feres v. United States, 340 U.S. 135, 146 (1950). "[W]here a complaint asserts injuries that stem from the relationship between the plaintiff and the plaintiff's service in the military, the 'incident to service test' is implicated." Aikens v. Ingram, 811 F.3d 643, 651 (4th Cir. 2016) (internal citation omitted); accord Cioca v. Rumsfeld, 720 F.3d 505, 515 (4th Cir. 2013). "The factors to be considered are: (1) the duty status of the service member; (2) the situs of the injury; and (3) the activity the service member was engaged in at the time of the injury." Shoen v. United States, 885 F. Supp. 827, 829 (E.D.N.C. 1995) (alteration in original omitted), aff'd, 81 F.3d 151 (4th Cir. 1996); Aikens, 811 F.3d at 650–51 (these factors are fact-specific, no bright-line rules have been adopted by "Feres and its progeny"). The incident to service test "does not inquire whether the discrete injuries to the victim were committed in support of the military mission, but instead whether the asserted injuries stem from the relationship between the plaintiff and the plaintiff's service in the military." Nacke v. United States, 783 F. App'x 277, 281 (4th Cir. 2019) (internal quotation marks omitted).

"[T]he Fourth Circuit has considered the rationales behind the incident to service test, as dictated by the Supreme Court, to bar most military service-based claims." Cubias v. United States, No. 5:19–CV–46–FL, 2019 WL 4621981, at *2 (E.D.N.C. Sept. 23, 2019) (internal citations and quotation marks omitted); accord Chappell v. Wallace, 462 U.S. 296, 299 (1983); Stewart v. United States, 90 F.3d 102, 105 (4th Cir. 1996) (finding that the Supreme Court has broadened the Feres Doctrine to include "at a minimum, all injuries suffered by military personnel that are even remotely related to the individual's status as a member of the military"). However, "the Feres [D]octrine does not bar an action against the United States for a service-

5

related injury suffered by a veteran as a result of independent post-service negligence." Broudy v. United States, 722 F.2d 566, 570 (9th Cir. 1983); accord United States v. Brown, 348 U.S. 110, 112 (1954) (finding that plaintiff's injury, permanent nerve damage as a result of a defective tourniquet applied in a veteran's hospital while on active duty, exempt from the Feres Doctrine because the injury itself occurred after discharge when the individual was on civilian status); Maas v. United States, 94 F.3d 291, 295–96 (7th Cir. 1996); Cole v. United States, 755 F.2d 873, 876 (11th Cir. 1985); Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1154–55 (5th Cir. 1981); In re Camp Lejeune N. Carolina Water Contamination Litig., 263 F. Supp. 3d 1318, 1342–43 (N.D. Ga. 2016), aff'd sub nom. Perez v. United States, Dep't of the Navy (In re Camp Lejeune, N.C. Water Contamination Litig.), 774 F. App'x 564 (11th Cir. 2019), cert. denied, Douse v. United States, No. 19–737, 2020 WL 2814771, at *1 (U.S. June 1, 2020), and cert. denied, Bryant v. United States, No. 19–982, 2020 WL 2814772, at *1 (U.S. June 1, 2020).

Plaintiff's claims against defendant, with exception of her negligence claim to the extent it alleges post-discharge failure-to-warn, are based on injuries that occurred while Clendening lived and worked at Camp Lejeune as an active duty JAG Officer. As such, injuries resulting from his daily life at Camp Lejeune, such as drinking and using contaminated water or living in a housing unit geographically near disposed radioactive materials, are incident to his military service. Other courts have reached a similar conclusion. See e.g., Foster v. Dep't of the Navy, No. 5:19–CV–429–FL, 2020 WL 1542092, at *3 (E.D.N.C. Mar. 31, 2020) (finding plaintiff's injury, arising from consuming contaminated drinking water while stationed at Camp Lejeune, incident to his military service and therefore barred under Feres); Swanson v. United States, No. 3:18–CV–02148–JR, 2019 WL 7633157, at *2 (D. Or. Nov. 6, 2019) (finding plaintiff's negligence claim for exposure to contaminated water barred by Feres because it occurred while

6

plaintiff was on active duty status as a student at Camp Lejeune's Motor Transport School), report and recommendation adopted, 2020 WL 423384 (D. Or. Jan. 24, 2020); In re Camp Lejeune, 263 F. Supp. 3d at 1341(dismissing all of plaintiff's claims under Feres, except for post-discharge failure-to-warn claims, as the servicemember's injuries were a result of drinking and using contaminated drinking water while on active duty at Camp Lejeune); O'Connell v. Dep't of Navy, No. CIV.A. 10–10746–NMG, 2010 WL 5572928, at *3 (D. Mass. Dec. 21, 2010) (finding plaintiff's claim barred by Feres because his injury caused by drinking water at Camp Lejeune, "arose out of military life"); Perez v. United States, No. 09–22201–CIV, 2010 WL 11505507, at *3 (S.D. Fla. Mar. 1, 2010) (finding plaintiff's injury from drinking and using contaminated water while on active duty at Camp Lejeune incident to his military service because it is the government's duty to provide housing and water for soldiers on military bases); Gros v. United States, No. CIV.A.H–04–4665, 2005 WL 6459834, at *2 (S.D. Tex. Sept. 27, 2005) (dismissing plaintiff's claim, "arising from the use of contaminated water in his home" at Camp Lejeune because it was legally indistinguishable from the injury in Feres), aff'd, 232 F. App'x 417 (5th Cir. 2007). Plaintiff's claim that Clendening was also injured as a result of direct exposure to radioactive waste and other improperly disposed toxic substances does not alter the court's conclusion.

However, plaintiff's negligence claim, to the extent she alleges a post-discharge failure-to-warn claim, does survive the Feres Doctrine. Plaintiff claims that after Clendening was discharged from the military, new information arose about his exposure to toxic chemicals. This information purportedly formed a new government duty to inform Clendening about his exposure and any injuries occurring thereafter.[2] All other claims will be dismissed under Feres.

---

[2] The government concedes in its brief that post-discharge failure-to-warn claims are not barred by Feres. (See Mem. Supp. Mot. Dismiss, DE # 21, at 20 (citing Cole v. United States, 755 F.2d 873 (11th Cir. 1985).)

7

B.  **Discretionary Function Exception**

The government argues this court lacks subject matter jurisdiction, independent of the Feres Doctrine, under the FTCA's discretionary function exception. (Mem. Supp. Mot. Dismiss, DE # 21, at 21.) Specifically, the government contends there is no "specific and mandatory provision requiring the United States to inform former residents of the contamination at Camp Lejeune" and, furthermore, that "any post-discharge warning decision regarding the contamination at Camp Lejeune would necessarily involve complex decision-making, including consideration of competing priorities and allocation of resources[,]" (id. at 23). In response, plaintiff contends the FTCA discretionary function exception does not apply because the "government concedes that the BUMEDS standards . . . that were enacted after Captain Clendening's service are enough to give rise to a duty to warn the servicemember after his service concluded." (Pl.'s Resp. Opp'n, DE # 23, at 24.) Plaintiff also cites to a 1981 Report of Radiological Affairs, asserting that the report shows the radioactive materials at Camp Lejeune were disposed of at the military base prior to the 1954 Atomic Energy Act ("AEA"), making their disposal a violation of a mandatory federal law. (Id. (citing DE # 23-2, Ex. B, at 7 ("As is stated in Appendix A, the Navy likely had an [Atomic Energy Commission] authorization to possess these buttons before licensing was implemented in accordance with the Atomic Energy Act of 1954")).)

"As a general matter, the United States is immune from suit unless it waives that immunity." Sanders v. United States, 937 F.3d 316, 327 (4th Cir. 2019) (internal citation omitted). The FTCA acts as such a waiver. Id. However,

> That waiver is subject to exceptions[] and one exception exists for the performance of discretionary functions. This exception immunizes the Government from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or

8

perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Id. (citing 28 U.S.C. § 2680(a) (2006)). Acts that are discretionary in nature "involv[e] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322 (1991) (internal citation omitted).

"The application of the discretionary function exception involves a two-step analysis. First, the court must determine whether the conduct at issue concerns an element of judgment or choice." Tate v. Camp Lejeune, No. 4:19–CV–91–D, 2019 WL 7373699, at *2 (E.D.N.C. Dec. 30, 2019) (internal quotation marks and citations omitted). This requires the court to examine "whether any federal statute, regulation, or policy specifically prescribes a course of action" regarding the underlying alleged conduct. Seaside Farm, Inc. v. United States, 842 F.3d 853, 858 (4th Cir. 2016). If "a statute, regulation, or policy prescribes the employee's conduct, the conduct cannot be discretionary and thus is unprotected by the discretionary function exception." Wood v. United States, 845 F.3d 123, 128 (4th Cir. 2017) (alternation in original). As for the second step, if there is no applicable federal statue, regulation, or policy, "the court must determine whether the decision was 'based on considerations of public policy.'" Tate, 2019 WL 7373699, at *2. That is, was the decision based in some type of social, economic, or political policy. See Wood, 845 F.3d at 128; see also Seaside Farm, Inc., 842 F.3d at 858 (finding that courts do not examine "whether policy considerations were actually contemplated in making [the] decision." (internal quotation marks omitted).) If the decision is based on public policy, the discretionary function exception applies, and the government is protected from any tort action. Id. Courts have generally found the discretionary function exception applies to bar post-discharge failure-to-warn claims regarding water contamination at Camp Lejeune. See In re Camp Lejeune, 263 F. Supp. 3d at 134; Tate, No. 2019 WL 7373699, at *2.

9

First, plaintiff fails to cite an applicable mandatory regulation which was in place when the government allegedly failed to warn Clendening. The BUMED provisions cited by plaintiff, and quoted above, regard the regulation of the water supply by treatment and imposed water quality standards at Camp Lejeune. (Compl., DE # 1, ¶¶ 35, 36; Pl.'s Resp. Opp'n, DE # 23, at 24.) They in no way direct the government to report such findings to the public or otherwise warn the public, at any time. Cf. Washington v. Dep't of the Navy, No. 7:19–CV–112–BO, 2020 WL 1230131, at *5 (finding the discretionary function exception did not apply to bar plaintiff's claim because "[w]ith respect to the BUMED's prohibition on permitting hazardous chemicals, known and unknown, to enter the water supply, there was no such choice"). Further, a line in the 1981 report regarding the 1954 AEA is not a specific governmental regulation regarding disclosure of information about potential radioactive material exposure to prior inhabitants of Camp Lejeune. In the absence of any legal or regulatory authority, the government's decision to disclose, or not disclose, such information regarding the water supply and Hadnot Point Fuel Farm involved judgment or choice.

Second, policy-making decisions control the government's action of whether to warn former inhabitants at Camp Lejeune of the contaminants in the water supply or any radioactive material exposure from living near the Hadnot Point Fuel Farm. "Plaintiffs cannot avoid the bar of section 2680(a) by casting their claims as a failure by the government to issue warnings of increased health risks." Minns v. United States, 974 F. Supp. 500, 505 (D. Md. 1997), aff'd, 155 F.3d 445 (4th Cir. 1998).

> [A]scertaining the need for a warning and its cost, and in determining the group to be alerted, as well as the content and procedure for such notice, the government would balance safety with economic concerns. Deciding whether health risks justify the cost of a notification program, and balancing the cost and effectiveness of a type of warning, are discretionary decisions covered by § 2680(a).

10

Id. (internal citation omitted). Therefore, the discretionary function exception bars plaintiff's claim based on the failure-to-warn.

### III. CONCLUSION

For the foregoing reasons, the government's motion is ALLOWED. Plaintiff's complaint is hereby DISMISSED. The Clerk is DIRECTED to close the case.

This 19 June 2020.

_____
W. Earl Britt
Senior U.S. District Judge